IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| TYLER BROSIUS, | Case No. 7:16-CV-00081-BO |
| Plaintiff, | Judge Terrence W. Boyle |
| v. | |
| ABBOTT BUS LINES, INC. d/b/a ABBOTT TRAILWAYS, TRAILWAYS TRANSPORTATION SYSTEM, INC. d/b/a TRAILWAYS, and JANICE COFFMAN, | **DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S DAUBERT MOTION TO EXCLUDE OPINION TESTIMONY OF GARY GILLETTE** |
| Defendants. | |

Pursuant to Rule 702 of the Federal Rules of Evidence and the other authorities and evidentiary materials cited herein, Defendants Abbott Bus Lines, Inc. d/b/a Abbott Trailways and Janice Coffman ("Defendants") submits this Memorandum in Opposition to Plaintiffs' Daubert Motion to Exclude Opinion Testimony of Gary Gillette.

## I. INTRODUCTION

Tyler Brosius was a Minor League Baseball pitcher for the Atlanta Braves' Class A-Advanced affiliate when he was injured in a May 2015 accident involving the charter bus transporting his team. The Defendants stipulated to both negligence and liability in regard to the accident.[1] Additionally, the parties agree that the injuries suffered by Plaintiff precluded him from continuing to pursue a career as a professional baseball player. As such, the trial on damages will focus on differing assessments of Plaintiff's prospects and likely earning potential as a professional baseball player.

Baseball evaluates players using two methods, scouting and statistics. Plaintiff has

---

[1] *See* Joint Stipulation Regarding Negligence, Liability, Damages & Disc. ¶ A, (ECF No. 46).

designated three expert witnesses – Frank Wren and Bruce Manno, who are both currently employed in Major League Baseball and have backgrounds in player scouting and development, and Seth Levinson, a baseball agent whose firm, ACES, represented Plaintiff. Plaintiff's expert witnesses offer opinions that evaluate Plaintiff's skill, talent, and career prospects from a scouting perspective. Plaintiff's expert witnesses also provided testimony discussing various characteristics of Plaintiff's pitching performance, such as his spin rate, and its potential importance in deceiving batters and resulting in an above-average strikeout rate. The opinions of Plaintiff's expert witnesses implicated numerous statistical questions, including whether Plaintiff in fact had an above-average strikeout rate.

Defendants designated Gary Gillette as an expert witness whose testimony will be offered at trial for the limited purpose of performing a statistical comparison of Plaintiff's pitching performance in comparison to his Minor League peers, against whom Plaintiff would be competing for opportunities to pitch in the Major Leagues. Mr. Gillette has worked for decades as a compiler of baseball statistics, researcher, baseball writer, editor, and consultant. During his career, Mr. Gillette has covered professional baseball in a number of different capacities and has written extensively regarding baseball and, in particular, the statistical analyses of baseball.[2]

With regard to this case, Mr. Gillette provided a lengthy report ("the Brosius Report") and two supplemental reports that document the work he performed, the materials he reviewed, and the conclusions he reached. Mr. Gillette performed an extensive analysis to assist in understanding the likelihood that a pitcher with certain characteristics, in the abstract, would make and remain on a Major League baseball roster. Mr. Gillette was then deposed on April 19,

---

[2]  Mr. Gillette's professional qualification and background is set forth in in his *curriculum vitae,* which was attached as the "Appendix" to his report (captioned "Brosius Report"). Mr. Gillette's Brosius Report was marked as Exhibit 27 to the Deposition of Gary Gillette. For the Court's convenience, a true and accurate copy of the Brosius Report, including the Appendix, has been attached hereto as Exhibit A.

2017 for several hours.[3] In that deposition, Mr. Gillette provided extensive testimony concerning his qualifications, the opinions he has reached in this matter regarding the statistical comparison of Plaintiff's professional pitching performance, and the work he performed in reaching those opinions. Mr. Gillette also discussed his opinions that rebut Plaintiff's experts' testimony and statistical questions implicated by Plaintiff's experts' testimony, including his statistical analysis that shows Plaintiff had a below-average strikeout rate.

Now, Plaintiff seeks to exclude Mr. Gillette from "offering opinions"[4] altogether in this matter for a laundry list of largely unrelated reasons:

(1) [Mr. Gillette] lacks sufficient knowledge, skill, experience, training and/or education to give expert testimony regarding Plaintiff's skill, talent, and future baseball potential;

(2) [Mr. Gillette] admits that he unqualified to evaluate a player's ability and skill;

(3) [Mr. Gillette] relies heavily on scouting reports ruled inadmissible by this Court;

(4) [Mr. Gillette's] reliance on statistics alone of other minor league players to project future potential is not an accepted practice in the baseball industry; and

(5) Player statistics are not specialized knowledge that a jury is unable to understand without an expert.[5]

By this Memorandum, Defendants oppose each of these arguments as follows.

## II. ARGUMENT

**(1) Gary Gillette Has Ample Experience and Knowledge to Provide Expert Testimony about Baseball Statistics and His Analysis of Player Statistics is Clearly a Valid Method for**

---

[3] A true and accurate copy of the deposition transcript of Gary Gillette is attached hereto as Exhibit B. The original is possessed by the Plaintiff.

[4] Plaintiff's Daubert Motion to Exclude Expert Opinion Testimony of Gary Gillette (ECF No. 117), p. 14.

[5] Plaintiff's Daubert Motion to Exclude Expert Opinion Testimony of Gary Gillette (ECF No. 117), p. 2.

3

## **Assessing the Prospects of a Professional Baseball Player.**

In his first argument to exclude the testimony of Mr. Gillette, Plaintiff notes that Mr. Gillette has never worked for a Major (or minor) League Baseball team and "lacks any formal training education or training in baseball scouting, coaching, management, or talent evaluation."[6] From this fact alone – and with no discussion of Mr. Gillette's professional background, the materials that he reviewed, or the work that he performed to reach his conclusions – Plaintiff leaps to the conclusion that Mr. Gillette "has no foundation for his opinion regarding the future baseball potential of Tyler Brosius."[7]

This argument ignores Mr. Gillette's extensive career in the baseball industry and the plain language of Fed. R. Evid. 702, which provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

As long recognized by the Fourth Circuit Court of Appeals, "[a] witness may be qualified as an expert by knowledge, skill, experience, training, *or* education. The 'or' indicates that a witness may be qualified as an expert by any one of the five listed qualifications."[8] As such, "[i]f a

---

[6] Plaintiff's Daubert Motion to Exclude Expert Opinion Testimony of Gary Gillette (ECF No. 117), p. 4.

[7] Plaintiff's Daubert Motion to Exclude Expert Opinion Testimony of Gary Gillette (ECF No. 117), p. 5.

[8] *Garrett v. Desa Indus., Inc.*, 705 F.2d 721, 724 (4th Cir. 1983)(*internal quotation and citation omitted); see also Friendship Heights Assocs. v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154, 1159 (4th Cir. 1986)("Rule 702 further provides that a witness may be qualified as an expert on the grounds of 'knowledge, skill, experience, training, or education.' . . . .the use of the disjunctive indicates that a witness may be qualified as an expert on any one of the five listed grounds."); *Lacayo v. Sodoma Farms*, 1997 U.S. App. LEXIS 25747, at *7 (4th Cir. 1997)("A person may qualify to give expert testimony through either knowledge, skill, experience, training, or education.")

4

witness qualifies on any of the grounds listed in Rule 702, he should be allowed to testify as an expert."[9] Finally, as "Federal Rule 702 embodies a liberal policy towards qualification as an expert,"[10] witnesses should not be excluded from testifying unless they are manifestly unqualified in the field to which they intent to offer opinions.

There is no question Mr. Gillette has the knowledge and experience to qualify as an expert in baseball statistics and comparative statistical analysis of professional baseball players – regardless of whether he has been employed directly by a professional baseball team. Mr. Gillette has spent his entire professional life in the baseball industry. As set forth in his original and supplemental reports ("the Brosius Report") and subsequently detailed in his deposition, Mr. Gillette has worked for decades as a compiler of baseball statistics, researcher, baseball writer, editor, and consultant.[11] There is no question he has "specialized" knowledge and experience regarding the statistics and statistical analysis about which he will be offered to testify and that his testimony "will help" the jurors in assessing Plaintiff's career prospects from a statistical perspective. This is all that is required by Fed. R. Evid. 702.

Apart from meeting the requirements of Rule 702, Plaintiff's' comment that Mr. Gillette lacks "formal education or training in baseball scouting" is both deceptive and inaccurate. First, there is no "formal education or training" in baseball scouting. On the contrary, baseball scouts acquire their expertise through experience – not via a college degree, professional license, or some other formal program. As a result, to say that Mr. Gillette lacks "formal" education and

---

[9] *Friendship Heights Assocs. v. Vlastimil Koubek, A.I.A.*, 785 F.2d 1154, 1162 (4th Cir. 1986).

[10] *In re "Agent Orange" Prod. Liab. Litig.*, 611 F. Supp. 1223, 1242 (E.D.N.Y. 1985); *see also Mishkin v. Ensminger (In re Adler,Coleman Clearing Corp)*, 1998 Bankr. LEXIS 404, at *17 (Bankr. S.D.N.Y. 1998)(The rule [referring to Fed. R. Evid. 702] embodies a liberal policy towards qualification as an expert.")

[11] *See* Brosius Report, pp. 2-3 (setting forth Mr. Gillette's "Qualifications") and Appendix (containing Mr. Gillette's resume or *curriculum vitae).*

5

training in baseball scouting is just a description of the industry and no criticism of Mr. Gillette.

Regardless, Defendants are not offering testimony from Mr. Gillette regarding any scouting evaluation opinions. In this case, the scouting reports produced by the Braves and other MLB teams that actually evaluate Plaintiff's baseball skill and talent and projected his career prospects are the Defendants' primary evidence concerning "scouting evaluations." The scouting reports combined with the supplemental testimony of defense expert Scott Nethery, a retired professional baseball scout, serve as the only basis for defense "scouting" evidence. Mr. Gillette is offered for a different and limited purpose – his analysis of Plaintiff's performance as a professional pitcher from a statistical perspective, including a comparison to his peers.

In short, Mr. Gillette has spent his entire professional career in the baseball industry and has specific experience performing statistical evaluations and comparisons of baseball players. He is more than qualified to provide expert testimony on the statistical analysis for which his testimony will be offered.

### (2) **Gary Gillette Did Not Admit that He Was Unqualified to Assess a Baseball Player's Prospects; He Simply Stated that He Did Not Form His Opinions Based on His Own Personal Observations of Tyler Brosius.**

Plaintiff's second argument for excluding Mr. Gillette from providing any expert testimony is only marginally different from the first argument. Specifically, Plaintiff notes that, while Mr. Gillette watched videos of Plaintiff pitching, he did not form his opinions based on these videos. Instead, as Mr. Gillette explained in both his report and deposition, his opinions were derived from a wide range of materials. These included the analysis of statistics of Plaintiff's pitching performances; the analysis of statistics regarding draft position and other data not specific to Plaintiff; his review of authoritative references such as Baseball America Prospect

6

Handbooks and Baseball Prospectus;[12] the performance of Plaintiff's teammates and similar prospects in the Atlanta Braves' organization; *etc.* Plaintiff brushes aside all of this and boldly pronounces that a baseball player's prospects can only be evaluated from personal observation:

> These skills [of evaluating a player from personal observation] are essential to the adequate analysis of a baseball player's professional potential, yet Mr. Gillette concedes he is unqualified to give such an analysis. . . . General knowledge of baseball or the keeping of baseball statistics does not qualify a witness to . . . evaluate a minor league players' skill, talent, and prospects of advancing to the Majors.[13]

This reasoning is flawed in multiple ways. First, not only is there no support for this assertion, Plaintiff himself contradicted it immediately. Just one sentence after the quoted language above, Plaintiff professed the importance of evaluating statistics (or "analytics") in evaluating baseball players: "Due to its significant in evaluating baseball players, most teams in

---

[12]  Plaintiffs' own expert, Frank Wren, who is presently employed as the Vice President, Director of Player Personnel for the Boston Red Sox, acknowledged the importance of Baseball America and Baseball Prospectus in evaluating baseball prospect and that he personally has relied on these sources:

> Q. Do you consider Baseball America to be a useful source by people in your industry?
>
> A. They -- they probably do the best job of assessing amateur talent, as far as collecting tools, data, from the scouts leading into the draft.
>
> Q. And what about Baseball Prospectus, what's your assessment?
>
> A. Baseball Prospectus, they're a little higher brow. It's a -- it's a different type of collection. Theirs is more -- Baseball Prospectus is much more statistically driven than Baseball America.
>
> Q. Did -- did you use information from Baseball Prospectus?
>
> A. Yes.
>
> Q. Okay. Did you use information from Baseball America?
>
> A. Yes.

Deposition of Frank Wren, p. 81. For the Court's convenience, the quoted excerpts of Mr. Wren's testimony are attached hereto as Exhibit C. The original transcript will be filed separately.

[13]  Plaintiff's Daubert Motion to Exclude Expert Opinion Testimony of Gary Gillette (ECF No. 117), p. 7.

Major League Baseball have an analytics department, which is used to analyze and project player performance."[14] Plaintiff is not alone in recognizing the importance of statistics in evaluating baseball players, as his own experts share this view. For example, Bruce Manno, a traditional scout and current employee of the Cincinnati Reds, repeatedly described the importance of analyzing statistics in evaluating players:

> Q. And do most major league baseball clubs use both scouting reports and statistics?
>
> A. Yes.
>
> Q. And why is that?
>
> A. Well, because I think, you know, with where we are today in analytics with baseball, the front office will generally look at the [scouting] report and they'll marry the analytics to the report to see how it matches up.[15]
>
> \* \* \*
>
> A. . . . there are some organizations that place tremendous value in their scouting. There are others who place value in it, but they also place a lot of value in where we are today as an industry and the analytics side of the game, looking at various statistical information and trying to do some future projections based upon what the analytics or the metrics maybe telling you right now about this player.[16]

Accordingly, as acknowledged by Plaintiffs' own experts,[17] both personal observation and statistical analysis are valid and widely used ways of assessing the future prospects of a

---

[14] Plaintiff's Daubert Motion to Exclude Expert Opinion Testimony of Gary Gillette (ECF No. 117), p. 7.

[15] Deposition of Bruce Manno, p. 39. For the Court's convenience, the quoted excerpts of Mr. Manno's deposition are attached hereto as Exhibit D. The original transcript will be filed separately.

[16] Deposition of Bruce Manno, pp. 35-36.

[17] *See Correa v. Cruisers*, 298 F.3d 13, 26 (1st Cir. 2002)("Acceptance of the methodology by the other party's expert may give additional credence to the reliability of the proffered testimony."); *Kudabeck v. Kroger Co.*, 338 F.3d 856, 861 (8th Cir. 2003) ("Simply because Dr. Reilly did not conduct his examination and treatment of [the plaintiff] in the manner [the defendant] preferred, does not render Dr. Reilly's testimony unreliable.")

professional baseball player. Mr. Gillette use of statistics to develop his conclusions does not disqualify him as an expert; it demonstrates the validity of his approach.

In short, Mr. Gillette's method of assessing a player's prospects by analyzing statistics complements the scouting evidence offered by both parties in this case. Moreover, Mr. Gillette's method is accepted as valid in the modern game of baseball. Statistics measures past pitching performance objectively in a way susceptible of allowing a qualified person to compare players. Scouting is different – professional evaluators rely on their personal observations and experience to evaluate players' skill and talent and project future career prospects. Major League Baseball teams rely on both. Here, the fact that Mr. Gillette did not rely on a subjective assessment based on personal observation follows naturally from his statistical, rather than scouting, approach and goes to the weight and not the admissibility of his opinions. In particular, it speaks to his intended trial role as offering statistical evidence objectively and comparatively measuring Plaintiff's past pitching performance, in contrast to the parties' respective scouting evidence, which focuses on projecting a player's future career prospects and role based upon firsthand observation and evaluation of his talent and skill.

### (3) Even if the Scouting Reports are Inadmissible, an Experts is Permitted to Rely on Inadmissible Material.

Plaintiff's third argument for excluding Mr. Gillette's opinions is that he relied on scouting reports, which this Court recently concluded are "properly excluded."[18] Plaintiff argues that, because Mr. Gillette "relies heavily on the scouting reports that have been ruled inadmissible . . . there is no foundation for his testimony."[19]

Factually, Defendants are not offering testimony from Mr. Gillette regarding any

---

[18] *See* Order (ECF No. 115)("the Court holds that the proffered scouting reports are properly excluded.")

[19] Plaintiff's Daubert Motion to Exclude Expert Opinion Testimony of Gary Gillette (ECF No. 117), p. 10.

9

scouting evaluation opinions. Mr. Gillette's testimony will be offered for a different and limited purpose at trial – his analysis of Plaintiff's performance as a professional pitcher from a statistical perspective, including a comparison to his peers. Much of Mr. Gillette's extensive analysis earlier in the case aided the defendants in evaluating Plaintiffs' claims but does not translate to anticipated trial testimony. He did not rely upon scouting reports as a basis for the statistical opinions that will be the subject of his proposed trial testimony.

Legally, Plaintiff's argument is contrary to the plain language of the evidentiary rules. Under Fed. R. Evid. 703, an expert may rely on inadmissible material in forming his opinions so long as those materials are normally relied on by experts in the field: "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."[20] Needless to say, scouting reports are the "kinds of facts or data" relied on by baseball professionals to assess the prospects of professional baseball players; this is precisely why the scouting reports are created. Moreover, in determining that certain certified scouting reports may be excluded, this Court did not deem them to be irrelevant or otherwise improper sources of data for the parties' baseball experts to consider. Accordingly, reliance on scouting reports by an expert would not be improper and would not automatically render opinions inadmissible.

**(4) <u>Mr. Gillette's Reliance of Player Statistics is Clearly a Valid Method for Assessing the Prospects of a Professional Baseball Player.</u>**

---

[20] Fed. R. Evid. 703; *see also Huthnance v. District of Columbia*, 793 F. Supp. 2d 183, 207 (D.D.C. 2011)('Federal Rule of Evidence 703 permits a testifying expert to rely on reports prepared by others for the specific purpose of providing a basis for the testifying expert's opinions as long as they are 'of a type reasonably relied upon by experts in the particular field.' Both experts testified that Ginger's report is of a type reasonably relied upon by experts in the field."); *City of Perth Amboy v. Custom Distribution Servs. (In re Custom Distribution Servs.)*, 224 F.3d 235, 246 n.8 (3d Cir. 2000)("The City also argues that the real estate appraiser should not have been permitted to rely on the Report and letters because they themselves were not submitted into evidence. We disagree. . . . The Bankruptcy Court questioned the real estate appraiser whether other experts in his field traditionally relied on such information, and the witness indicated that they did.").

Plaintiff's fourth argument for excluding the testimony of Mr. Gillette is a rehash of the first argument – though stated in the inverse. In the first argument, Plaintiff contended that Mr. Gillette was not qualified to assess the prospects of a baseball player because he relied on statistics rather than direct, personal observations of Mr. Brosius. In this argument, Plaintiff contends Mr. Gillette's reliance "on statistics to make both evaluations and determinations about a minor leaguer's future professional potential . . . is not a generally accepted method within the baseball industry." [21]

As demonstrated by the statements of Plaintiff and his own experts, the analysis of statistics is clearly a generally accepted method of evaluating Minor League players in the baseball industry.[22] In fact, as Mr. Manno testified, every Major League team now relies on statistics in some fashion for their player evaluations.[23] Accordingly, and for the same reasons discussed in section II(1) above, the Plaintiff's fourth argument lacks merit.

### (5) Experts Commonly Use Statistics to Support their Opinions.

The final argument offered by Plaintiff to exclude Mr. Gillette's opinions is easily the most quixotic. Plaintiff notes that baseball statistics are common-place and, therefore, Mr. Gillette's use of them to reach his conclusions requires no particular expertise. This argument reduces Mr. Gillette's experience, research, method for compiling, calculating, and analyzing statistics, and subsequent conclusions to simply comparing Plaintiff's playing statistics with

---

[21] Plaintiff's Daubert Motion to Exclude Expert Opinion Testimony of Gary Gillette (ECF No. 117), p. 11.

[22] Deposition of Frank Wren, pp. 105-106 (Q. Okay. What type of data was available in the Minor League system to assist in making this decision to promote players from one level to the next? A. Game reports, there would be reports where, you know, the -- the managers would give their evaluation of individual performances; there would be -- there would be statistical analysis that we would use . . . ."); Deposition of Bruce Manno, p. 48 (Q. As a scout, when you're looking at a minor league pitcher, are you evaluating statistics? Are you looking at any of the statistics? MR. BAILLY: Objection. THE WITNESS: You're going to look at the statistics, but . . . it's not all about the statistics in the minor leagues.")

[23] Deposition of Bruce Manno, p. 39 (Q. And do most major league clubs use both scouting reports and statistics? A. Yes."); *see Correa v. Cruisers*, 298 F.3d 13, 26 (1st Cir. 2002)("Acceptance of the methodology by the other party's expert may give additional credence to the reliability of the proffered testimony.")

11

those of other players.

Courts have long recognized that statistical data and accompanying expert testimony is useful and admitted in a variety of civil litigation to aid the jury's understanding of a subject. Here, statistical data is available regarding Plaintiff's professional pitching career from 2013 to 2015. Mr. Gillette compiled that statistical data, performed numerous calculations concerning the statistical data, and analyzed Plaintiff's performance as measured by statistics and compared that against statistical data of other Minor League Pitchers. Mr. Gillette is well qualified to illuminate the question of whether or not Plaintiff was an elite pitcher from a statistical perspective, which is otherwise absent from this case. And, as discussed above, Major and Minor League baseball teams compile and utilize statistics for this exact purpose.

### III.  CONCLUSION

In summary, Fed. R. Evid. 702 does not require an expert witness to be employed by a specific entity, have specific qualifications, or even use a specific method to qualify as an expert and provide opinion testimony to a jury. On the contrary, as long as a witness has "scientific, technical or other specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness [is] qualified as an expert . . . ."[24] Mr. Gillette is a professional who has researched, compiled, analyzed, calculated, and written about baseball statistics in various capacities for decades. He is more than qualified by virtue of his specialized knowledge to assist the jury in understanding the statistical data that will be necessary for their assessment of the career and earnings prospects of Plaintiff as a professional baseball player. Accordingly, he should not be precluded from testifying at trial and Plaintiff's motion to exclude Gillette's opinion testimony should be denied.

---

[24]  Fed. R. Evid. 702.

For all of the foregoing reasons, Defendants believe that it would be appropriate for the Court to deny the plaintiff's motion. Defendants respectfully request that the Court wait until the time of trial, when the parties and their experts may be heard and the Court has a more complete understanding of the parties' respective trial evidence and the nature of the remaining dispute, before deciding whether and to what extent to limit Gillette's testimony.

Respectfully submitted,

| | |
|---|---|
| */s/ James Kelly Ratliff* | */s/ Joseph E. Wall* |
| Douglas W. Rennie | Joseph E. Wall (N.C. Bar No. 4533) |
| (Ohio Bar No. 0001148; Ky. Bar No. 57595) | Lori P. Jones (N.C. Bar No. 32872) |
| James Kelly Ratliff | JORDAN PRICE WALL GRAY JONES & CARLTON, PLLC |
| (Ohio Bar No. 0088479; Ky. Bar No. 93703; Tenn. Bar No. 035876) | 1951 Clark Avenue |
| Elaine M. Stoll | Raleigh, North Carolina 27605 |
| (Ohio Bar No. 0087913; Ky. Bar No. 95289) | Phone: 919-828-2501 |
| Brandon A. Woodard | Fax: 919-831-4484 |
| (Ohio Bar No. 0089509; Ky. Bar No. 95344) | Email: jwall@jordanprice.com |
| Gregory A. Kendall | ljones@jordanprice.com |
| (Ohio Bar No. 0090933; Ky. Bar No. 96490) | *Attorneys for Defendants* |
| MONTGOMERY, RENNIE & JONSON | *Local Civil Rule 83.1(d) Counsel* |
| 36 East Seventh Street, Suite 2100 | |
| Cincinnati, Ohio 45202 | |
| Phone: 513-241-4722 | |
| Fax: 513-241-8775 | |
| Email: drennie@mrjlaw.com | |
| kratliff@mrjlaw.com | |
| estoll@mrjlaw.com | |
| bwoodard@mrjlaw.com | |
| gkendall@mrjlaw.com | |
| *Attorneys for Defendants* | |
| *Special Appearance Per Local Rule 83.1(e)* | |

*/s/ Raymond A. Neuer*
Raymond A. Neuer
(Tex. Bar No. 14928350)
SHEEHY, WARE & PAPPAS, P.C.
909 Fanin Street, Suite 2500
Houston, Texas 77010
Phone: 713-951-1027
Fax: 713-951-1199
Email: rneuer@sheehyware.com
*Attorney for Defendants*
*Special Appearance Per Local Rule 83.1(e)*

## CERTIFICATE OF SERVICE

       I hereby certify that on May 1, 2018, I electronically filed the foregoing Memorandum in Opposition to Plaintiff's Daubert Motion to Exclude Opinion Testimony of Gary Gillette with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties, including the following:

John J. Bailly
Katherine G. Hall
Richard DePonto
Bailly and McMillan, LLP
244 Westchester Avenue, Suite 410
White Plains, New York 10604
Email: jbailly@bandmlaw.com
       khall@bandmlaw.com
       rdeponto@bandmlaw.com

*Attorneys for Plaintiff Tyler Brosius*

Thomas K. Lindgren
Thomas K. Lindgren, PLLC
3400 Crossdaile Drive, Suite 304
Durham, North Carolina 27705
Email: tlindgren@lindgrenlegal.com

*Local Civil Rule 83.1 Counsel for Plaintiff Tyler Brosius*

       This the 1st day of May, 2018.

                                    MONTGOMERY RENNIE & JONSON

                                    */s/ James Kelly Ratliff*
                                    James Kelly Ratliff
                                    Email: kratliff@mrjlaw.com
                                    *Attorney for Defendants*
                                    *Special Appearance Per Local Rule 83.1(e)*